IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **DERIC LAVELLE MAY, # 209534,** | : | |
| Plaintiff, | : | |
| vs. | : | CIVIL ACTION 10-0121-CG-C |
| **GRANT CULLIVER,** *et al.***,** | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983. This action was referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4). After careful consideration, it is recommended that this action be dismissed without prejudice, prior to service of process, pursuant to 28 U.S.C. §1915(e)(2)(B)(ii) for failure to state a claim upon which relief can be granted.

**I. Amended Complaint (Doc. 8) as Supplemented (Doc. 17).**

The complaint before the Court is an amended, superseding complaint (Docs. 8, 13), which has been supplemented with information provided by plaintiff in response to the Court's order to clarify his medical claim against defendant Warden Grantt Culliver. (Docs. 13, 14). Plaintiff names as defendants Warden Grantt Culliver, John Doe, and Jane Doe. (Doc. 8 at 6). No allegations, however, are directed to defendants John Doe and Jane Doe. The incident about which plaintiff complains is identified as occurring on March 14, 2008. (*Id.* at 5).

1

Plaintiff's allegations begin by stating that on March 14, 2008 at W. E. Donaldson Correctional Facility ("Donaldson"), he started the day by being told that he was being transferred. (*Id.*). His destination was not known by the officers except one officer indicated that Tuscaloosa may be his destination. (*Id.* at 5, 9). This destination made sense to plaintiff because after a recent fight, a neurosurgeon at Caraway Hospital could not find the top of a VP shunt in this head,[1] and Tuscaloosa was the location of the doctor who placed the VP shunt in him twenty years ago. (*Id.* at 9-10). Plaintiff maintains that sending him to his original doctor would have been the humane thing to do because "ADOC and CMS knew that they didn't have the adequate form of technology plaintiff needed." (*Id.* at 10).

When plaintiff departed from Donaldson's back gate, an officer told him that he was being transferred "down south." (*Id.* at 10). When plaintiff arrived at Holman Correctional Facility ("Holman"), upon leaving the transporting van, he was ordered to change handcuffs. (*Id.*). At that time "Sgt. Corbitt started laughing cause he knew that [the] transfer was being intefer[r]ed with." (*Id.*). Sgt. Corbitt grabbed plaintiff's institutional and medical files and transcript, and opened the institutional file to verify plaintiff's identity with his AIS number. (*Id.* at 10-11). "That same file was flag[g]ed,[2] but now it may not because [his] first 1983 civil complaint, raised allegations about institution file being flag[g]ed due to [his] serious medical

---

[1] A VP shunt, i.e., "[v]entriculoperitoneal shunt[,] is a surgical procedure in which a tube or catheter is inserted into the ventricles, or cavities, in the brain to drain excess cerebrospinal fluid into the abdomen." James Wason, MD, *Medicineonline*, http://www.medicineonline.com/articles/v/2/VP-Shunt/Ventriculoperitoneal -Shunt.htnl (last visited July 14, 2011).

[2] No explanation was given regarding the flagging procedure or its relevance.

2

issues and ADOC disregarded them. That first complaint[3] was illegally censored, and that is why the file may not be flag[g]ed []now." (*Id.* at 11).

Plaintiff was placed in segregation, and later that evening he was taken to the infirmary where he underwent screening and a physical examination by Nurse Langford. (*Id.* at 11). He told her about "his VP shunt [and] other serious medical issues, and the excessive amount of AVM's[4] that [were] removed from the brain. [His] medical file was flag[g]ed name alert because that kind of information was in [his] file." (*Id.*).

On March 18, 2008, the segregation board came through the segregation unit, but plaintiff was unable to get their attention. (*Id.*). Then a week later he met with Dr. Barnes, who acted as though he did not know what an AVM was. (*Id.*). Dr. Barnes is alleged to be known for limiting medical care. (*Id.* at 12).

On April 23, 2008, a CT scan of plaintiff was done at Atmore Community Hospital. (*Id.*). On May 2, 2008, Dr. Barnes read him the "falsified report" stating there was "no evidence of AVM's" and would not give him a copy of the report. (*Id.*). Plaintiff asserts that AVM's are in the arteries, but his veins were checked instead. (*Id.*).

---

[3] The Court was only able to find one other action for plaintiff on PACER ("Public Access to Court Electronic Records"). Plaintiff filed *May v. Sexton, et al.*, CA 7:97-2881-SCP-RRA (N.D. Ala. Feb. 19, 1998), while he was incarcerated in the Tuscaloosa County Jail. This action was dismissed prior to service of process for failure to prosecute   The electronic record did not contain the substance of the complaint, but the order dismissing the action indicates that in the complaint that plaintiff did not adequately identify medical personnel who allegedly provided inadequate medical care. (Doc. 6.)

[4] "Arteriovenous malformations (AVMs) . . . are tangled, dilated blood vessels in which arteries flow directly into veins. AVMs occur most often at the junction of cerebral arteries, usually within the parenchyma of the frontal-parietal region, frontal lobe, lateral cerebellum, or overlying occipital lobe." THE MERCK MANUAL OF DIAGNOSIS AND THERAPY 1798 (Mark H. Beers, M.D. et al. eds.) (18th ed. 2006).

3

On June 17, 2008, plaintiff was seen by a neurologist, Dr. Larry Epperson, in Montgomery, Alabama. (*Id.*). Dr. Epperson reviewed the CT scan and found swelling at the top of the VP shunt. (*Id.*). Dr. Epperson recommended that plaintiff see a neurosurgeon and prescribed pain medication, which plaintiff never received because it was "intentionally interfered with." (*Id.*).

On August 11, 2008, plaintiff was seen by a neurosurgeon, Dr. Eugene Quindlen,[5] at the University of South Alabama's Medical Center. (*Id.*). Dr. Quindlen was not able to look at the VP shunt because the record of plaintiff's April 23, 2008 CT scan was missing. (*Id.*). Officials who transported plaintiff told him that he will have to have another CT scan done. (*Id.* at 13).

On September 15, 2008, plaintiff was taken to Atmore Community Hospital where an MRI was scheduled. (*Id.*). However, the doctor said that the MRI cannot be done because plaintiff had metal clips in him. (*Id.*).

On July 22, 2009, plaintiff was a returned to Atmore Community Hospital to have another CT scan of his brain. (*Id.*). Plaintiff asserts that nothing has been done since that this test. (*Id.*). Plaintiff maintains that his VP shunt is twenty years old and is deteriorating and that ADOC knew it could not provide him with adequate treatment when he was taken into its custody, but knowing that it has a duty to provide adequate medical care. (*Id.*). "The only thing the medical staff has been doing is running[,] being aided and abetted by ADOC and treatment is being interfer[r]ed with." (*Id.*). Furthermore, "there is [a] conspiracy going on at WC Homan and that system is inadequate as a whole." (*Id.*). In conclusion, plaintiff states that his claim is

---

[5] Plaintiff identified this doctor as Dr. Quinland and Dr. Quinlan. The telephone directory has a listing for Dr. Quindlen. *The Real Yellow Pages*, 391 (2009-10).

4

that ADOC "prescribe[d] him torture and other barbarous methods of punishment and [he] [wa]s subject to the acts of cruel and unusual punishment[.]" (*Id.*).

For plaintiff's specific claim against defendant Warden Culliver, he alleges that defendant Culliver "violated [his] Eighth Amendment Constitutional right by not providing Plaintiff with a humane condition of confinement[.] Defendants placed Plaintiff's health and welfare into jeopardy by not providing plaintiff with any adequate medical care or shelter." (*Id.* at 6). The facts to support this claim are:

> On 3-14-08 WC Holman learned that a serious medical issue existed and disreg[arded] it. Plaintiff's medical file use[d] to be flag[g]ed "name alert." Institutional file use to be flag[g]ed and character testimony of Plaintiff's VP shunt and Plaintiff's other serious medical conditions are in Plaintiff's transcript and ADOC disregarded it and exposed Plaintiff to the excessive risk of harm and didn't provide Plaintiff with any adequate medical care at all.

(*Id.*).

For relief, plaintiff seeks $500,000.00 in compensatory damages, $1,000,000.00 in punitive damages, and a preliminary injunction of an unspecified nature. (*Id.*).

In response to a filing by plaintiff (Doc. 12), the Court's issued an order requiring plaintiff to inform the Court if he wanted to proceed on his medical claim against Warden Grantt Culliver. (Doc. 13 at 3). In the order the Court also commented:

> [P]laintiff's pleading of his medical claims is unclear. The Court cannot determine the nature plaintiff's immediate medical condition that needed to be addressed in March, 2008 and the injury that resulted from an action or inaction that transpired at that time. (The court realizes that plaintiff had a pre-existing medical condition.)

(*Id.* at 2).

In response to the Court's order, he stated that he wanted to proceed on his claim against defendant Culliver and wanted to make his claim clearer. (Doc. 17 at 1). Thus, he added:

5

> Plaintiff ask this Court to focus on the effects the conditions ha[ve] on his health and safety, not the condition itself. Plaintiff's medical condition is life threatening and ADOC etc. is Deliberate[ly] Indifferent to the medical need and saf[e]ty. ADOC interfer[r]ed with that medical need and safety when the transfer was interfere[r]ed with. The medical need that Plaintiff need is a full examination etc. of his VP shunt.

(*Id.*).

After explaining that the VP shunt drains fluid from his brain in order to keep pressure from building, plaintiff alleged that:

> [S]ince March 2008 Warden Culliver has allowed officials to interfer[e] with and refuse[] to carry treatment out. Culliver allowed those i[m]proper operation to go on so his tracks can be covered because if the medical staff would ha[ve] provided Plaintiff with the adequate treatment that was needed, it would have been known by others that Plaintiff posed a threat and had a life threatening condition and was exposed to dangerous and hazardous conditions. Mr. Culliver etc. already knew these conditions exist[ed] because causation and injury is well documented in Plaintiff's transcript or the record. Mr. Culliver etc. knew those dangerous and hazardous condition[s] exist. Mr. Culliver etc. was keeping things quiet and didn't think Plaintiff had a copy of the transcript or record and Mr. Culliver etc. took advantage of Plaintiff's medical condition.

(*Id.* at 2).

In this filing plaintiff asked to supplement his complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure. (*Id.*). The information that he seeks to supplement is that on July 12, 2010, he was seen by Dr. Quindlen who said that the VP shunt needed to be changed. (*Id.* at 3). Plaintiff maintains that ADOC already knew this, which is the reason that plaintiff was transferred and his medical records were lost, thereby delaying medical treatment and causing the build up of fluid on plaintiff's brain and his ultimate death. (*Id.*).

**II. Standards of Review Under 28 U.S.C. § 1915(e)(2)(B).**

Because plaintiff is proceeding *in forma pauperis*, the Court is reviewing the his amended complaint (Doc. 8) as supplemented (Doc. 17) under 28 U.S.C. § 1915(e)(2)(B).[6] Under § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32, 104 L.Ed.2d 338 (1989). A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit, *id.* at 327, 109 S.Ct. at 1833, or the claim seeks to enforce a right that clearly does not exist. *Id.*

Moreover, a complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted. *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations must show plausibility. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* ___ U.S. ___, ___, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 555, 557, 127 S.Ct. at 1965, 1966 (second brackets in original). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, ___ U.S. at ___, 129 S.Ct. at

---

[6]The frivolity and the failure-to-state-a-claim analysis contained in *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989), was unaltered when Congress enacted 28 U.S.C. § 1915(b)(2)(B) in 1996. *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir.), *cert. denied*, 534 U.S. 1044 (2001). However, dismissal is now mandatory under § 1915(e)(2)(B). *Id.* at 1348-49.

1949. Moreover, when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, dismissal for failure to state a claim is also warranted. *Jones v. Bock*, 549 U.S. 199, 215, 127 S.Ct. 910, 920-21, 166 L.Ed.2d 798 (2007).

When considering a *pro se* litigant's allegations, a court gives them a liberal construction holding them to a more lenient standard than those of an attorney. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 593, 595-596, 30 L.Ed.2d 652 (1972). However, a court, does not have "license . . . to rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an action." *GJR Investments v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Iqbal*, 129 S.Ct. 1937. Furthermore, a *pro se* litigant "is subject to the relevant law and rules of court including the Federal Rules of Civil Procedure." *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir.), *cert. denied*, 493 U.S. 863 (1989).

**III. Analysis.**

    **A. Defendants John Doe and Jane Doe.**

The only identified defendant is Holman's former warden Grantt Culliver.[7] In regard to the other defendants, no descriptive information that would lead to the identification of John Doe and Jane Doe is provided. As a result defendants John Doe and Jane Doe would not be able to be served with process in this action. Furthermore, with no descriptive information about defendants John Doe and Jane Doe being provided, they are due to be dismissed from this action because fictitious party practice is not permitted in federal court. *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (affirming the dismissal of John Doe guard pursuant to the

---

[7] The Court takes judicial notice from the many prisoner actions on its docket that defendant Culliver is no longer the warden at Holman. *Nguyen v. United States*, 556 F.3d 1244, 1259 n.7 (11th Cir. 2009) (the Court can take judicial notice of its records.)

general rule that fictitious party practice is not permitted in federal court inasmuch as no descriptive information was provided in the complaint to satisfy the exception); *cf. Dean v. Barber,* 951 F.2d 1210, 1215-1216 (11th Cir. 1992) (finding John Doe should have been allowed as a defendant in light of the specific identifying information).

### B. Defendant Warden Grantt Culliver.

#### 1. Section 1983 Pleading Requirements.

Turning to the claims against the only identified defendant, Grantt Culliver, the plaintiff must establish a causal connection between defendant Culliver's acts or omissions and an alleged deprivation of his constitutional rights in order to state a claim under 42 U.S.C. § 1983. *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986). Because defendant Culliver was the warden at the time plaintiff's claims arose, he was acting in the capacity of a supervisor. A supervisor cannot be held liable in a § 1983 action based on the actions of subordinates as vicarious liability is not a recognized theory of liability under § 1983. *Iqbal*, 129 S.Ct. at 1948 ("a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). "Supervisor liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir.), *cert. denied*, 500 U.S. 933 (1991). An example of such a causal connection is where an established or utilized policy or custom of the defendant results in deliberate indifference to a prisoner's constitutional rights. *Zatler*, 802 F.2d at 401; *cf. Iqbal*, 129 S.Ct. at 1952 (requiring the allegations to show that the official who initiated the policy or custom have a "discriminatory state of mind" in promulgating the custom or policy).

#### 2. Section 1983's Standard for Pleading a Medical Claim.

The constitutional deprivation at issue is the alleged lack of medical care under the Eighth Amendment. To establish a medical claim under § 1983 the plaintiff "must allege acts or omissions sufficiently harmful to evidence a deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). The first aspect of an Eighth Amendment medical claim requires that there be a serious need for medical treatment. It is only those needs that are serious that can be addressed as "society does not expect that prisoners will have unqualified access to health care[.]" *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992). "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. Dekalb Reg'l Youth Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) (quotation and quotation marks omitted), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 n.9, 122 S.Ct. 2508, 2515 n.9, 153 L.Ed.2d 666 (2002).

The other aspect of an Eighth Amendment medical claim requires plaintiff to establish that defendant Culliver was deliberately indifferent. "To violate the Cruel and Unusual Punishments Clause, a prison official must have a sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994) (quotation and quotation marks omitted). "While *Estelle* establishes that deliberate indifference entails something more than mere negligence, the cases are also clear that it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835, 114 S.Ct. at 1978. "[S]ubjective recklessness as used in the criminal law is . . . the test for `deliberate indifference' under the Eighth Amendment." *Id.* at 840-41, 114 S.Ct. at 1980. To establish the requisite deliberate indifference, "the prisoner must prove three

facts: (1) subjective knowledge of a risk of a serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004).

### 3. Failure to Establish a Causal Connection and Deliberate Indifference.

In the present action, plaintiff's allegations in the amended complaint (Doc. 8) and in his supplement (Doc. 17) cause the Court great difficulty because they lack specificity, particularly in regard to showing a connection to defendant Culliver and the necessary state of mind by defendant Culliver to state a claim against him. Plaintiff named as the sole defendant a correctional official and attributes to him a claim for lack of medical care. Even though a correctional official can be held liable on a medical claim, *see, e.g., Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) (opining that prison guards may be liable under the Eighth Amendment for delaying or denying access to medical care), such cases are not as typical as an inmate seeking to impose liability on medical personnel because "[t]he Alabama Department of Corrections contracts out medical and psychiatric care to a private provider." *Thomas v. Alabama,* CA 2:08-891-WHA, 2011 WL 294223, at*2 (M.D. Ala. Jan. 7, 2011).[8] Moreover, supervisory correctional officials may be entitled to rely on medical judgments made by medical professionals responsible for prisoner care. *See, e.g., Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir.1993); *White v. Farrier*, 849 F.2d 322, 327 (8th Cir.1988).

In carefully reviewing plaintiff's allegations, the Court finds that the references to defendant Culliver are very few. (Doc. 8 at 6, Doc. 17 at 2). In fact, the allegations reflect a

---

[8] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11TH CIR. R. 36-2 (2005).

tendency by plaintiff to identify ADOC as causing most of the complained of conditions or situations, rather than plaintiff identifying the individual official who violated his constitutional rights. For example, plaintiff alleges that ADOC disregarded plaintiff's condition, exposed plaintiff to an excessive risk of harm, did not provide plaintiff with adequate medical care (Doc. 8 at 6), and interfered with his medical need and safety when the transfer was interfered with (Doc. 17 at 1), and WC Holman learned of his medical issue. (Doc. 8 at 6). More allegations of this nature can be found in plaintiff's general description of his claims. (*Id.* at 9-13).

In those few instances where defendant Culliver is mentioned, plaintiff alleges that defendant Culliver did not provide plaintiff with "a humane condition of confinement," and placed plaintiff's "health and welfare into jeopardy by not providing adequate medical care or shelter." (*Id.*). Then in the supplemental allegations plaintiff alleges that defendant Culliver has allowed officials to interfere with and refuse to carry out plaintiff's treatment in order to cover his tracks, and he knew these dangerous conditions existed but was keeping them quiet, as it is well documented. (Doc. 17 at 2).

Some of words or terms used by plaintiff are conclusions that a court would draw based on detailed factual information provided by allegations. Examples of such conclusions are: "humane condition of confinement," "health and welfare into jeopardy by not providing adequate medical care or shelter," "allowed," "interfered," "refused," and "knew." The first two allegations are legal conclusions and the remaining allegations become conclusions because they are without facts to show how plaintiff's conclusion was reached.

Moreover, allegations that are conclusions are not entitled to an assumption of truth. *Iqbal*, 129 S.Ct. at 1950. It is only the well-pleaded, non-conclusory factual allegations that a court will consider as being truthful in the determination of whether a claim is plausible. *Id.*

However, it is plaintiff's burden at screening to show that he has a plausible claim in order to avoid dismissal for failure to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); *Twombly*, 550 U.S. at 557, 127 S.Ct. at 1966. "A claim has facial plausibility when the plaintiff pleads *factual* content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949 (emphasis added). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting FED.R.CIV.P. 8(a)(2)). To establish that a claim is plausible there must be sufficient detailed factual allegations raising the right to relief beyond the speculative level with "enough heft to 'sho[w] that the pleader is entitled to relief.'" *Twombly,* 550 U.S. at 555, 557, 127 S.Ct. at 1965, 1966. That is, a plaintiff must "nudge [his] claim[] across the line from conceivable to plausible[.]" *Id.* at 570, 127 S.Ct. at 1974.

In the present action, plaintiff has not provided sufficient detailed factual allegations demonstrating defendant Culliver's deliberate indifference and a causal connection between defendant Culliver and his medical claim in order to state a plausible claim showing that he is entitled to relief. Specific details of defendant Culliver's acts, omissions, customs, or policy that caused a constitutional deprivation to plaintiff are absent. There is no information about what defendant Culliver did to cause a constitutional deprivation of a medical nature to plaintiff. Thus, plaintiff's allegations concerning defendant Culliver are vague and conclusory and fail to establish the required causal connection to his medical claim. *See Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984) (ruling that vague and conclusory allegations are subject to dismissal).

Even though the allegations do not show how defendant Culliver is connected to plaintiff's medical claim and how defendant Culliver was deliberately indifferent, plaintiff's allegations do have the tenor of attempting to hold defendant Culliver responsible for the actions of others. However, as a warden defendant Culliver cannot be held liable in a § 1983 action for the acts or omissions of subordinates. *Monell v. Department of Social Servs. of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978) (ruling that an employer cannot be held liable in a § 1983 action under the theory of *respondeat superior* simply because it employs a tortfeasor). Section 1983 imposes liability only on the person who causes the injury to another. *Monell,* 436 U.S. at 692, 98 S.Ct. at 2036; *cf. Zatler*, 802 F.2d at 401 (finding that no claim was stated against the prison commissioner because he was sued for being the "chief policy-maker of the Florida Department of Corrections who is charged with the care, control and supervision of all inmates of and personnel" and therefore no personal participation was shown). Thus, defendant Culliver could not be able to be held liable based solely on the actions of a subordinate.

In addition, the Court notes that the Alabama Department of Corrections ("ADOC") was frequently mentioned by plaintiff. The ADOC, however, cannot be a defendant in a § 1983 action. Section 1983 requires that a "person" be named as a defendant. *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992). Whereas, the State and its arms are not "persons" for the purpose of a § 1983 action. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989); *Haywood v. Drown*, ___U.S. ___, 129 S.Ct. 2108, 2114 n.4, 173 L.Ed.2d 920 (2009) (affirming the *Will* decision). Furthermore, a "suit against the State and its Board of Corrections is barred by the Eleventh Amendment." *Alabama v. Pugh*, 438 U.S.

781, 782, 98 S.Ct. 3057, 3057, 57 L.Ed.2d 1114 (1978); *see* ALA. CODE § 14-1-1.1 (ADOC is the successor to the Board of Corrections).

Because plaintiff has not established that defendant Culliver was deliberately indifferent, plaintiff has failed to establish one of the necessary elements for stating a medical claim under § 1983. *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292. Therefore, it is not necessary that the Court address whether plaintiff had a serious medical need on March 14, 2008 because both elements must be established for an Eighth Amendment violation to have occurred. The Court does note in passing that plaintiff's allegations concerning his medical need have more specificity than his allegations regarding defendant Culliver's state of mind, but not to a significant degree. Nonetheless, his allegations do show that he is receiving medical care for his pre-existing condition. If the dispute is over the adequacy of the medical care, a constitutional claim is generally not stated. *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir.) ("Where a prisoner has received . . . medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law.") (quotation omitted), *cert. denied*, 475 U.S. 1096 (1986); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir.1989) (ruling a "simple difference in medical opinion" does not constitute deliberate indifference); *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) ("[T]he question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment."); *Harris v. Thigpen*, 941 F.2d 1495, 1510 (11th Cir. 1991) (holding the Constitution does not require that prisoners health care be "perfect, the best obtainable, or even very good") (quotation omitted); *cf. McElligot v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (finding that deliberate indifference

may result when the "decision is to take an easier but less efficacious course of treatment . . . . or [when treatment] is so cursory as to amount to no treatment at all") (quotation omitted).

## IV. Conclusion.

Based upon the foregoing reasons, it is recommended that this action be dismissed without prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief can be granted. At this time plaintiff has the opportunity to file an objection to this report and recommendation. In the event that plaintiff wants to file another amended complaint, he should include his request in the objection and should attach his amended complaint to the objection. When this action against defendant Culliver is dismissed, plaintiff will be not be able file a viable action against defendant Culliver based on the March 14, 2008 incident because the two-year statute of limitations will have run on this claim against defendant Culliver. *Lufkin v. McCallum*, 956 F.2d 1104, 1106, 1108 (11th Cir.), *cert. denied*, 506 U.S. 917 (1992); ALA. CODE § 6-2-38(l).

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this 21st day of July, 2011.

                                  s/WILLIAM E. CASSADY
                                  UNITED STATES MAGISTRATE JUDGE

# MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

l.      **Objection**.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[9] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      **Transcript (applicable Where Proceedings Tape Recorded)**.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

                                         s/WILLIAM E. CASSADY
                                         UNITED STATES MAGISTRATE JUDGE

---

[9] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).