**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **DERIC LaVELLE MAY, AIS # 209534,** | : | |
| Plaintiff, | : | |
| vs. | : | CIVIL ACTION 10-0121-CG-C |
| **GRANTT CULLIVER,** *et al.*, | : | |
| Defendants. | : | |

**REPORT AND RECOMMENDATION**

This action is before the Court for the screening of plaintiff's second amended complaint (Doc. 25) pursuant to 28 U.S.C. § 1915(e)(2)(b). The screening of complaints and amendments filed by inmates who are proceeding *in forma pauperis* has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4). After careful consideration of the second amended complaint, it is recommended that the second amended complaint be denied pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) as it is subject to dismissal with prejudice for failure to state a claim upon which relief can be granted. *See Halliburton & Assoc. v. Henderson, Few & Co.*, 774 F.2d 441, 444 (11th Cir. 1985) (holding that permission to amend may be denied when the claim, as amended, is subject to dismissal).

**I. Proceedings and Second Amended Complaint (Doc. 25 ).**

Based on the screening of plaintiff's first amended complaint as supplemented (Docs. 8, 17),[1] a report and recommendation to dismiss this action against the sole identifiable defendant, Grantt Culliver, was entered on July 21, 2011.  (Doc. 19).  The recommendation of dismissal was made pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) for failure to state a claim upon which relief can be granted.  (*Id.*).  Subsequently, plaintiff filed a second amended complaint (Doc. 25), presumably in response to the recommendation's admonition that "[w]hen this action against defendant Culliver is dismissed, plaintiff will [] not be able [to] file a viable action against defendant Culliver based on the March 14, 2008 incident because the two-year statute of limitations will have run on this claim against defendant Culliver."  (Doc. 19 at 16).

In the second amended complaint, plaintiff names four defendants, Warden Grantt Culliver, Health Service Administrator Donny Myers, LPN Langford, and Sgt. Corbitt.[2]  (Doc. 25 at 12-13).  When plaintiff filed his original complaint on March 11, 2010, he named Warden Culliver as a defendant along with defendants John Doe and Jane Doe, and mentioned Nurse Langford and Sgt. Corbitt in his description of his claims.  (Docs. 1, 8).  Subsequently, the Doe defendants were recommended for dismissal because no descriptive information was given about them so they could not be served.  (Doc. 19 at 8-9).

In the second amended complaint filed on August 31, 2011, plaintiff identifies the date of the complained of incident as March 14, 2008, which is the date previously given for the incident

---

[1] Plaintiff's supplement was filed in response to the Court's order informing plaintiff that his pleading of his medical claim is unclear in that the Court "cannot determine the nature of plaintiff's immediate medical condition that needed to be addressed in March, 2008 and the injury that resulted from an action or inaction that transpired at that time" even though the Court realized that he had a pre-existing medical condition.  (Doc. 13 at 2).

[2] The Court is using the spelling of defendants' names with which it is familiar based on other prisoner cases if a variance from plaintiff's spelling is observed, e.g., Grant and Corbett.

in his prior amended complaint. (Doc. 25 at 4). The second amended complaint's allegations, like his prior allegations, concern his transfer from William C. Donaldson Correctional Facility ("Dondaldson") on March 14, 2008 to Holman Correctional Facility ("Holman"), where after his arrival he continued to complain about his aging ventriculoperitoneal shunt ("VP shunt") and the arteriovenous malformations in his brain ("AVMs"). His other allegations in the second amended complaint concern the medical treatment that he received at Holman, and are substantially the same to his allegations in his first amended complaint.

The following is a brief summary of those allegations in the second amended complaint. While at Donaldson, plaintiff was told that he was being sent to the neurosurgeon in Tuscaloosa who implanted his VP shunt to determine if the shunt was functioning properly.[3] (Doc. 25 at 8). Plaintiff, however, was transferred to Holman. (*Id.* at 8). When he arrived at Holman, defendant Corbitt, Officer Parish, and Officer Peacock were at the back gate and then defendant Culliver arrived in a white car. (*Id.*). These officers had a private conversation with defendant Culliver. (*Id.*). The transporting officer "changed handcuffs and Warden Culliver didn't try to stop the misconduct[.]" (*Id.*). Defendant Corbitt "laugh[ed] [be]cause he [k]new the transfer was being interfered with[, and] grabbed plaintiff['s] institutional file, medical file, and transcript." (*Id.*). Defendant Corbitt placed plaintiff in an isolated, segregation cell. (*Id.*). The institutional receiving officer did not screen plaintiff at that time or take him to the ICS office as

---

[3] In his prior allegations, he stated that he was in a fight and was examined by a neurosurgeon at Carraway Hospital who was not able to see the top of his shunt which kept the doctor from injecting dye into it for testing. (Doc. 8 at 9).

the officer should have. (*Id.*). Plaintiff believes that this was not done because the officer "m[a]y have known the tr[a]nsfer was interfere[r]ed with."[4] (*Id.*).

Defendant Corbitt took plaintiff from that cell to a cell in the main segregation unit. (*Id.* at 9). During the 11:00 p.m. to 6:00 a.m. shift, defendant Corbitt took plaintiff to the infirmary for medical screening and a physical. (*Id.*). He may have been processed into the prison at that time because defendant Corbitt and defendant Langford were sitting in front of a computer. (*Id.*). Plaintiff told defendant Langford that his VP shunt needed to be examined because "he was having vision problems, irritability, tir[e]dness, loss of coordination and balance, and seizures." (*Id.*). Plaintiff also told her that he had AVMs. (*Id.*). Plaintiff alleges that defendants Langford and Corbitt disregarded these facts because "they knew they had exposed plaintiff to dangerous and hazardous conditions, and knew plaintiff was a risk." (*Id.*).

In the remainder of plaintiff's allegations, he chiefly recounts the medical treatment he received at Holman without referring to any of the four defendants named in the second amended complaint. (*Id.* at 9-11). Briefly, these allegations show that on March 28, 2008, Dr. Barnes saw him and he "debated with Dr. Barnes about his medical background and life-threatening medical condition." (*Id.* at 9). On April 23, 2008, plaintiff was taken to Atmore Community Hospital where a CT scan of his VP shunt was done. (*Id.*). On May 2, 2008, plaintiff was taken to Dr.

---

[4] In his second amended complaint no explanation was offered by plaintiff informing the Court how interfering with his transfer rises to the level of a violation of the Constitution, which is necessary to state a § 1983 claim. The Constitution permits prison officials to place an inmate in any one of their facilities. *Meachum v. Fano*, 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976) (finding that "the Due Process Clause [does not] in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system . . . . within the normal limits or range of custody which the conviction has authorized the State to impose. That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated[.]").

Barnes for the report, which plaintiff claims was falsified so Dr. Barnes could limit his medical care. (*Id.* at 10).

On June 17, 2008, plaintiff was taken to Jackson Hospital in Montgomery where Dr. Epperson, a neurologist, reviewed the CT scan. (*Id.*). Having noticed what appeared to be swelling on the VP shunt system, Dr. Epperson recommended that plaintiff be seen by a neurosurgeon and prescribed pain medicine, which plaintiff did not receive. (*Id.*). On August 11, 2008, plaintiff was taken to the Medical Center at the University of South Alabama, where he was seen by a neurosurgeon, Dr. Quindlen, but without a copy of his CT scan. (*Id.*). Plaintiff contends that the failure to bring the CT scan was part of an attempt to delay treatment, and prevented Dr. Quindlen from making a recommendation. (*Id.*). On September 17, 2008, plaintiff was taken to the Atmore Community Hospital for an MRI, which could not be done because he has metal clips in this body. (*Id.*). On July 22, 2009, plaintiff returned to the Atmore Community Hospital for a second CT scan. (*Id.*).

Plaintiff contends that his condition "is life threatening and the delay was medically unjustified" with the medical staff knowing that delay would exacerbated his condition. (*Id.* at 10-11). Plaintiff alleges that:

> The medical staff provided treatment that was so grossly incompetent, inadequate, excessive as to shock the conscience, and intolerable to fundamental fairness. It is ADOC[']s duty to provide plaintiff with adequate medical treatment. Treatment was inadequate and needed more diagnostics, treatment was interfered with and never carried out. Plaintiff [was] pr[e]scribed torture and other barbarous methods of punishment and maybe subject to the acts of cruel and unusual punishment. There is a conspiracy going on between ADOC and CMS and that system at WC Holman is inadequate as a whole. *Warden Culliver, Receiving Officer Parish, CO Brewer, Sgt. Corbitt, CO Peacock, Nurse Langford had no authority to interfere with what the Commissioner had approved. On[e] of those officer[]s [is] res[p]onsible or maybe all initiated and participate in the v[io]lation of plaintiff's rights.*

5

(*Id.* at 11) (emphasis added).

Plaintiff's claim against defendant Myers is for an Eighth Amendment violation that occurred when he "neglected" his responsibilities as the Health Services Administrator and "recklessly disregarded an extremely serious medical need." (*Id.* at 12). Defendant Myers treated plaintiff's medical condition with indifference when he delayed treatment and did not ensure that the recommended treatment was carried out. (*Id.*). And on March 14, 2008, he "refused to ensure that plaintiff was proper[l]y evaluated." (*Id.*). In plaintiff's general description of his claims, no reference is made to defendant Myers.

Plaintiff claims that defendant Langford violated the Eighth Amendment on March 15, 2008, when she "recklessly disregard[ed] plaintiff's extreme[e]ly serious medical need." (*Id* at 12). She was indifferent to his need when she "refused to give the[] acquired facts to medical personnel about plaintiff's [VP shunt] . . . [knowing] plaintiff was at risk if not treated appropriately" thereby putting plaintiff's health in jeopardy. (*Id.* at 13).

Plaintiff claims defendant Corbitt violated the Eighth Amendment on March 15, 2008[5] when he failed to respond reasonably after being given advanced notice that a serious medical condition existed and that a substantial risk of harm would result if plaintiff was not treated appropriately. (*Id.* at 13). Defendant Corbitt is further alleged to be uncaring and unconcerned when he exposed plaintiff to dangerous and hazardous conditions that posed an unreasonable risk of harm to plaintiff. (*Id.*).

Defendant Grantt Culliver is alleged to have violated plaintiff's Eighth Amendment rights when on March 14, 2008, he "neglected" his responsibilities to ensure that plaintiff had

---

[5] Plaintiff's allegations contain the date of March 15, 2008.

humane conditions of confinement when he failed to adequately train, oversee, and discipline Holman officials. (*Id.* at 12). Plaintiff maintains that through defendant Culliver's misconduct his serious, life-threatening condition was overlooked, thereby exposing him to dangerous and hazardous conditions, which defendant Culliver did not abate. (*Id.*).

## II. Standards of Review Under 28 U.S.C. § 1915(e)(2)(B).

Because plaintiff is proceeding *in forma pauperis*, the Court is reviewing his second amended complaint (Doc. 25) under 28 U.S.C. § 1915(e)(2)(B). Under § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32, 104 L.Ed.2d 338 (1989).[6] A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit, *id.* at 327, 109 S.Ct. at 1833, or the claim seeks to enforce a right that clearly does not exist. *Id.*

Moreover, a complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted. *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations must show plausibility. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 566 U.S. 662, ___, 129 S.Ct. 1937,1949, 173 L.Ed.2d 868 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to

---

[6]The frivolity and the failure-to-state-a-claim analysis contained in *Neitzke* was unaltered when Congress enacted 28 U.S.C. § 1915(e)(2)(B) in 1996. *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir.), *cert. denied*, 534 U.S. 1044 (2001). However, dismissal is now mandatory under § 1915(e)(2)(B). *Id.* at 1348-49.

7

'sho[w] that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 555, 557, 127 S.Ct. at 1965, 1966 (second brackets in original).  The court will treat these factual allegations as true. *Iqbal*, 129 S.Ct. at 1949.  However, the court will not accept as true "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts," *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal,* 566 U.S. at __, 129 S.Ct. at 1949.  Furthermore, when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, dismissal for failure to state a claim is also warranted.  *Jones v. Bock*, 549 U.S. 199, 215, 127 S.Ct. 910, 920-21, 166 L.Ed.2d 798 (2007).

When considering a *pro se* litigant's allegations, a court gives them a liberal construction holding them to a more lenient standard than those of an attorney.  *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595-596, 30 L.Ed.2d 652 (1972).  However, a court, does not have "license . . . to rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an action."  *GJR Investments v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Iqbal*, 129 S.Ct. 1937.  And a *pro se* litigant "is subject to the relevant law and rules of court including the Federal Rules of Civil Procedure."  *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir.), *cert. denied*, 493 U.S. 863 (1989).

### III.  Analysis.

#### A.  Defendant Corbitt.

In order to state a claim a plaintiff must plead a claim that is plausible on its face. *Twombly*, 550 U.S. at 557, 127 S.Ct. at 1966.  In a § 1983 action, a state actor must violate a constitutional right of the plaintiff in order to state a claim.  *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v.*

*Williams,* 474 U.S. 327, 330-31 (1986).  A causal connection must be established between the deprivation of the plaintiff's constitutional rights and the defendant's actions, orders, customs, or policies in order to state a claim upon which relief may be granted in a § 1983 action.  *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986).

Regarding a § 1983 medical claim, a "deliberate indifference to serious medical needs of prisoners" must be shown in order to state a claim.  *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976).   This requires a plaintiff to "show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury."  *Mann v. Taser Int'l, Inc.,* 588 F.3d 1291, 1306-07 (11th Cir. 2009).  However, not every claim of inadequate medical care states a claim.  *Estelle*, 428 U.S. at 291-92, 97 S.Ct. at  105-06 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").  A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Farrow v. West,* 320 F.3d 1235, 1243 (11th Cir. 2003) (citation and quotation marks omitted).  And the deliberate indifference standard is satisfied by showing "the prison official's: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence."  *Brown v. Johnson,* 387 F.3d 1344, 1351 (11th Cir. 2004).

Plaintiff's allegations against defendant Corbitt are nebulous, for the most part, and the allegations containing facts do not state a § 1983 medical claim.  Defendant Corbitt is charged with laughing when plaintiff arrived at Holman based on plaintiff's belief that defendant Corbitt

9

knew plaintiff's transfer was being interfered with,[7] with grabbing plaintiff's files upon arrival, with placing plaintiff in an isolated segregation cell, with taking plaintiff to a main segregation cell and then to the infirmary for medical screening and a physical that night, and with hearing his medical conditions when plaintiff told defendant Langford of them.  Plaintiff claims defendant Corbitt disregarded these facts which thereby "exposed plaintiff to dangerous and hazardous conditions[,] kn[owing] plaintiff was a[t] risk."  (*Id.*at 9).  He also claims that defendant Corbitt did not respond reasonably even though he had advanced notice of plaintiff's serious medical condition and that a substantial risk of harm that would result if plaintiff was not treated appropriately and that defendant Corbitt had "no authority to interfere with what the Commissioner had approved."  (*Id.* at 11, 13).

These allegations fail to convey a claim to the Court that defendant Corbitt's actions or inactions caused plaintiff an injury, much less an injury of constitutional magnitude.  Defendant Corbitt is not a medical official.  There are no allegations of a condition presenting itself upon arrival that would have been obvious to lay person that a doctor's attention was needed, of delay, or of an injury resulting from his actions.  The fact that plaintiff does not like how he was treated by defendant Corbitt does not rise to the level of a deprivation of a constitutional right.  *See Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) (finding that a claim for the denial of a prescribed aspirin was frivolous in that the necessary medical need was not present because the "allegations in the complaint surrounding this claim fail[ed] to specify his pain or medical condition, plead any injury, or explain the circumstances surrounding the denial of the aspirin by [the nurse]").

---

[7] Defendant Corbitt was an officer at Holman when plaintiff was received.  Plaintiff offers no information showing how defendant Corbitt or the other defendants "interfered" with his transfer from Donaldson.

Furthermore, plaintiff does not describe the interference with his transfer or explain how interference with his transfer rises to the level of a constitutional deprivation.[8] He mentions that defendants Corbitt, Culliver and Langford "interfere[ed] with what the Commissioner had approved." (Doc. 25 at 11). The Court can only deduce from this and his other allegation that he would rather be examined by the doctor in Tuscaloosa who implanted his shunt rather than receive medical care provided by CMS at Holman. *Cf.* Doc. 25 at 14-15 (showing the grievances, written by plaintiff in February, 2008, while he was at Donaldson, questioning the tests and treatment he received from a neurosurgeon at Carraway Hospital after his fight and then requesting an MRI, which was contraindicated due to metal in his body).[9] However, "[w]here a prisoner has received ... medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law." *Hamm v. DeKalb County,* 774 F.2d 1567, 1575 (11th Cir.) (The courts conclude that a deliberate indifference is not shown when an inmate wants a different

---

[8] This is the first and only reference to the Commissioner having approved some unidentified matter. Plaintiff's description in his first amended complaint contained no reference to the Commissioner. Rather, the first amended complaint contained a detailed description of conversations with prison officials at Donaldson just prior to plaintiff's departure with no mention of any involvement by the Commissioner. One officer told him that he was going to Tuscaloosa and another officer told him he was "going down south." (Doc. 8 at 9-10). ("Going down south" is a euphemism that the Court has seen used by other prisoners in their actions to indicate that the inmate is being sent to a prison in the Atmore, Alabama area, particularly Holman.) Whereas, in the second amended complaint, plaintiff recasts his allegations to state exclusively that he was to be sent to Tuscaloosa. Doc. 25 at 8.

Inasmuch as plaintiff provided no factual information concerning his claim about interference with what the Commissioner approved, the Court finds that it fails to state a claim in regard to the defendants against whom it was asserted, defendants Corbitt, Culliver, and Langford.

[9] CMS's response to plaintiff's grievance states: "Mr. May[, i]f you saw a neurosurgeon at Carraway[,] then why are you still unhappy? You can[']t see another one because you don[']t like what he told you. If you need a follow up app[ointment,] we will send you." Doc. 25 at 14.

mode of medical treatment than that which he received) (citations and quotation marks omitted), *cert. denied*, 475 U.S. 1096 (1986)..  Accordingly, plaintiff has not stated a plausible claim against defendant Corbitt.

### B.  Defendant Langford.

Plaintiff alleges that defendant Langford was sitting at the computer during his medical screening when he informed her that his VP shunt needed to be examined because he was experiencing vision problems, irritability, tiredness, loss of coordination and balance, and seizures and that he had AVMs.  (*Id.* at 9).  He claims that she disregarded these facts because she knew that she had exposed him to dangerous conditions knowing that he was at risk and did not pass this information along to medical personnel.  (*Id.*).  He alleges that she recklessly disregarded his extremely serious medical need.  (*Id.*at 12).

These allegations against defendant Langford fail to allege a plausible claim because they lack facts.  Plaintiff's allegations contain mostly words and phrases that are conclusions that need facts to support them, e.g., "recklessly disreg[]arding," "unconcerned and intention[ally] overlooked plaintiff," "knew plaintiff was at risk if not treated appropriately," and "health and welfare was put in jeopardy."  (*Id.* at 13).  There is no factual information showing that plaintiff had a medical need at the time of the screening that required defendant Langford to take immediate action on March 15, 2008.  *See Bingham, supra*.  Even though plaintiff contends that defendant Langford did not pass along his medical information to other medical personnel, the Court deduces otherwise based on plaintiff's other allegations of several subsequent appointments for medical tests and examinations by the prison doctor, a neurologist, and a neurosurgeon.  *Cf.  Battle v. Central State Hosp.,* 898 F.2d 126, 130 n.3 (11th Cir. 1990) (ruling that "allegations that are contradicted by other allegations in the complaint may also constitute

12

grounds for dismissal" as frivolous).  Based on these allegations against defendant Langford, the Court finds that plaintiff has failed to state a plausible claim against her.

### C. Defendant Myers.

Plaintiff claims defendant Myers neglected "to attend to his responsibilities as a Health Services Administrat[or]" and to "adequately train, oversee, and discipline medical personnel." (*Id.* at 12).  On March 14, 2008, he failed to ensure that "plaintiff was properly evaluated." (*Id.*). Defendant Myers "recklessly disreg[]arded" and  was "unconcerned," "uncar[]ing," and "indifferen[t]"  "to an "extremely serious medical need" when he "delay[ed] treatment" and did not "ensure that the recommended treatment was carried out." (*Id.*).  These brief allegations against defendant Myers lack facts to support them.  They are conclusions reached by plaintiff without showing a factual basis for them.  Furthermore, plaintiff's allegations concerning defendant Myers' supervisory functions fail to present a claim that is not encompassed by the theory of *respondeat superior*, which is not a recognized basis for liability in a § 1983 action. *Monell v. Department of Soc. Servs. of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978) (holding that *respondeat superior* which seeks to impose liability on a superior for a subordinate's actions is not a basis for liability in a § 1983 action).  Accordingly, the Court finds that plaintiff has failed to state a claim that is plausible against defendant Myers.

### D. Defendant Culliver.

Plaintiff alleges that defendant Culliver "neglected . . . his responsibilities as a warden" and "did not ensure that plaintiff had humane conditions of confinement." (Doc. 25 at 12).  On March 14, 2008, plaintiff contends that defendant Culliver "failed to adequately train, oversee, and discipline" Holman officials, which resulted in their overlooking his medical condition and exposing plaintiff to hazardous conditions which he neglected to abate.  Facts offered in the

second amended complaint regarding defendant Culliver have him talking with subordinates when plaintiff arrived at Holman (*id.* at 8) and then failing "to stop the misconduct."[10] (*Id.* at 8).

Plaintiff's allegations do not contain facts that reflect a violation of plaintiff's constitutional rights. Many of his allegations are simply conclusions that are unsupported by any facts, e.g., "neglected . . . responsibilities," "did not ensure . . . humane conditions of confinement," and "failed to adequate train, oversee, discipline." Without facts, these statements are merely conclusions that do not amount to a plausible claim. In the absence of supporting facts, the tenor of these allegations, like plaintiff's prior allegations, is that defendant Culliver is liable because as the warden he is responsible for the actions of others. Liability, however, cannot be imposed in a § 1983 action vicariously or on the basis of *respondeat superior*. *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036. In addition, negligence cannot serve as a basis for liability in a § 1983 action. *Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986) ("the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property"); *Davidson v. Cannon,* 474 U.S. 344, 348, 106 S.Ct. 668, 671, 88 L.Ed.2d 677 (1986) ("As we held in *Daniels*, the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials."). To state a § 1983 medical claim a defendant's deliberate indifference must be established, which is conduct that is more than negligence. Accordingly, plaintiff has failed to state a plausible claim against defendant Culliver.

**E.  Statute of Limitations.**

---

[10] This allegation concerning defendant Culliver being present at plaintiff's arrival was added in the second amended complaint even though plaintiff gave a detailed description of his arrival at Holman in the first amended complaint.

An alternate basis for the dismissal of the three newly named defendants is the statute of limitations. Plaintiff's second amended complaint was filed on August 25, 2011. (Doc. 25). However, he knew of defendant Langford's and defendant Corbitt's involvement in his claims when he signed his original complaint on March 4, 2010. (Doc. 1). Their involvement in the original complaint is the same as described in the second amended complaint, i.e., defendant Langford conducted the medical screening of plaintiff and defendant Corbitt laughed when plaintiff arrived at Holman, grabbed plaintiff's file, and escorted him to a cell and eventually to his medical screening. (Doc. 1 at 8-9). Defendant Donny Myers is not mentioned in the original complaint, nor is he mentioned in plaintiff's general description of his claims in the second amended complaint.

These three defendants were brought to the fore on August 25, 2011. (Doc. 25). This is more than two years from March 14, 2008, when plaintiff states that his claim accrued.[11] However, the statute of limitations for a § 1983 action filed in Alabama is two years. *Lufkin v. McCallum,* 956 F.2d 1104, 1106, 1108 (11th Cir.), *cert. denied,* 506 U.S. 917 (1992); ALA. CODE § 6-2-38(l). Therefore, plaintiff's claims against defendants Corbitt, Langford, and Myers are barred by the statute of limitations unless it can be shown that these claims "relate back" to the original complaint.

For the second amended complaint to relate back to the original complaint, plaintiff must satisfy Rule 15(c)(1)(C), which provides:

> An amendment to a pleading relates back to the date of the original pleading when:
>
> . . . .

---

[11] Plaintiff also uses the date of March 15, 2008 in regard to some of his claims concerning defendant Langford.

15

>       (C) the amendment changes the party or the naming of the party
>       against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied
>       and if, within the period provided by Rule 4(m) for serving the
>       summons and complaint, the party to be brought in by amendment:
>
>>      (i) received such notice of the action that it will not be
>>      prejudiced in defending on the merits; and
>
>>      (ii) knew or should have known that the action would have
>>      been brought against it, but for a mistake concerning the
>>      proper party's identity.

Fed.R.Civ.P. 15(c)(1)(C).  The Supreme Court recently addressed this provision in *Krupski v. Costa Crociere S.p.A.*, ___U.S. ___,  130 S.Ct. 2485, 177 L.Ed.2d 48 (2010).  The Court explained that "Rule 15(c)(1)(C)(ii) asks what the prospective defendant knew or should have known . . ., not what the plaintiff knew or should have known at the time of filing her original complaint."  130 S.Ct. at 2493 (finding that the amendment naming the corporate parent as a defendant should have been allowed because the corporate parent had notice of the litigation and, but for a mistake as to the role of the corporate parent, the corporate parent would have been named as the defendant).

Unlike the plaintiff in *Krupski* who knew the identities of the two defendants but did not know each defendant's role, the identity of defendant Langford and defendant Corbitt and their roles in the claims were known to plaintiff at the time he filed the original complaint.  After reviewing the file in this action, the Court is unable to find any indication that these three defendants had notice of this action.  Subsection C (i) is therefore not satisfied.  And plaintiff has identified the roles of each of the three defendants in the second amendment as being distinct from the role of defendant Culliver, the sole original defendant.  Thus, subpart C (ii) is not met.  As a consequence, the claims against defendants Corbitt, Langford, and Myers in the second amended complaint do not relate back to the original complaint.

Accordingly, these claims are barred by the two-year statute of limitations because the filing of the claims against defendant Corbitt, Langford, and Myers on August 25, 2011 was in excess of two years from March 14, 2008 or March 15, 2008, when plaintiff states that the incidents occurred.

## IV.  Conclusion.

Based upon the foregoing reasons, it is recommended that the second amended complaint be denied pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii ) as it is subject to dismissal with prejudice for failure to state a claim upon which relief can be granted.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this 3rd day of February, 2012  .

        _s/WILLIAM E. CASSADY_____
        UNITED STATES MAGISTRATE JUDGE

### MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

l.    **Objection**.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within

17

ten days[12] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **Transcript (applicable Where Proceedings Tape Recorded)**.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

    s/William E. Cassady     
UNITED STATES MAGISTRATE JUDGE

---

[12] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).